# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| ANDREW THOMPSON, derivatively on behalf of ARDENT HEALTH, INC. | ) ) ) Case No. |
| Plaintiffs, | ) ) VERIFIED COMPLAINT |
| v. | ) ) JURY TRIAL DEMANDED |
| MARK R. SOTIR, MARTIN J. BONICK, PETER J. BULGARELLI, PETER C.B. BYNOE, SUZANNE CAMPION, ROBERT A. DEMICHIEI, WILLIAM M. GOODYEAR, ELLEN HAVDALA, EDMONDO ROBINSON, MD, RAHUL SEN, ROBERT T. WEBB, and ALFRED LUMSDAINE, | ) ) ) ) ) ) ) ) |
| Defendants, | ) ) |
| -and- | ) ) |
| ARDENT HEALTH, INC., | ) ) |
| Nominal Defendant. | ) ) ) |

Plaintiff Andrew Thompson ("Plaintiff"), derivatively on behalf of Ardent Health, Inc. ("Ardent" or the "Company"), brings the following verified complaint against the Company's board of directors (the "Board") and executive officers for breaches of fiduciary duties, gross mismanagement, waste of corporate assets, unjust enrichment, and violation of Section 14(a) of the Securities Exchange Act of 1934. Except for allegations specifically pertaining to Plaintiff and Plaintiff's own acts, the allegations in the Complaint are based upon information and belief, which include but are not limited to: (i) the Company's public filings with the United States Securities and Exchange Commission (the "SEC"); (ii) pleadings filed in *Postiwala v. Ardent Health, Inc. et al,* Case No.: 3:26-CV-0022 (M.D. Tenn.) (the "Securities Class Action"); (iii) corporate governance documents available on the Company's website; (iv) media reports; and (v) other

publicly available information.

## NATURE OF THE ACTION

1.      This is a stockholder derivative action brought by Plaintiff, a stockholder of Ardent, on behalf of the Company against the Defendants (as defined herein). This action alleges breaches of fiduciary duty by the Board and senior executive officers occurring from at least July 18, 2024 to November 12, 2025 (the "Relevant Time Period"). During that time, the Defendants caused or allowed Ardent to issue or make materially false and misleading statements concerning the Company's financial condition and business operations.

2.      Ardent and its affiliates operate acute care hospitals and other healthcare facilities. The Company generates virtually all its revenue from "net patient service revenue," which consists of revenue from general and specialty services, including internal medicine, general surgery, and emergency services, within inpatient and ambulatory care.

3.      The Company recognizes net patient service revenue in the period services are rendered, based upon the amounts it is to receive from patients and third-party payors, including Medicare, Medicaid, and managed care payors. The portion of revenue not yet collected is recorded as accounts receivable until payment is received.

4.      A self-described critical aspect of Ardent's operations is the collection of accounts receivable. This includes the framework by which the Company determines the collectability of such accounts, *i.e.*, whether the amounts will ultimately be paid or must be written off. Timely writing-off of uncollectable accounts stemming from claim denials by third-party payors, or uninsured or underinsured patients who cannot pay the bill, is crucial because failure to do so would overstate Ardent's accounts receivable balance.

5.      Since May 2022, Ardent has outsourced its revenue cycle management functions to Ensemble Health Partners ("Ensemble"). Pursuant to relevant service agreements, Ensemble provides "end-to-end revenue cycle services" for Ardent, including collections from patients and third-party payors as well as assistance in appealing payor claim denials.

6.      This case arises out of Defendants' misrepresentations regarding Ardent's accounts receivable. During the class period, Defendants publicly reported the Company's accounts receivable on a quarterly basis. They further stated that Ardent employed an active monitoring process to determine the collectability of its accounts receivable, and that this process included "detailed reviews of historical collections" as a "primary source of information." Further, Defendants represented that Ardent considered "trends in federal and state governmental healthcare coverage" and that its "management determines [when an] account is uncollectible, at which time the account is written off."

7.      When Defendants began to reveal increased claim denials by third-party payors, they downplayed the issue, stating that increased payor denials were "turning [] more into a slow pay versus not getting paid," and did not write off the uncollectible accounts. In addition, Defendants represented that the Company maintained professional malpractice liability insurance in amounts "sufficient to cover claims arising out of [its] operations[.]"

8.      In truth, Ardent did not primarily rely on "detailed reviews of historical collections" in determining collectability of accounts receivable nor did "management determine [] [when an] account is uncollectible." Instead, the Company's accounts receivable framework "utilized a 180-day cliff at which time an account became fully reserved." This allowed Ardent to report higher amounts of accounts receivable during the Relevant Time Period, and delay recognizing losses on uncollectable accounts. And Ardent did not even maintain professional malpractice liability

insurance in amounts "sufficient to cover claims arising out of [its] operations [.]" In truth, Ardent's professional liability reserves were insufficient to cover "significant social inflationary pressure in medical malpractice cases the past several years," which had been an "increasing dynamic year-over-year" in the Company's New Mexico market.

9.     On November 12, 2025, after market hours, Ardent revealed a $43 million decrease in third quarter 2025 revenue. The decrease resulted from revised determinations of accounts receivable collectability after the Company transitioned to a new revenue accounting system and from purported "recently completed hindsight evaluations of historical collection trends." The new system – called the Kodiak RCA net revenue platform – provided management with "additional information to more precisely" determine accounts receivable collectability, including "more timely consideration of payor denial and payment trends." Officer Defendant Lumsdaine revealed that the new system "recognizes reserves earlier in an account's life cycle" compared to the Company's prior collectability framework, which "had utilized a 180-day cliff at which time an account became fully reserved."

10.     Ardent also announced a cut about 9.6% to 2025 EBITDA guidance of $57.5 million at the midpoint, from $575 million - $625 million to $530 million - $555 million because of "persistent industry-wide cost pressures," including "payor denials." In addition, Ardent recorded a $54 million increase in professional liability reserves "with respect to recent settlements and ongoing litigation arising from a limited set of claims between 2019 and 2022 in New Mexico" as well as "consideration of broader industry trends, including social inflationary pressures."

11.     On this news, the price of Ardent stock fell $4.75 per share, or nearly 34%, from $14.05 per share on November 12, 2025, to close at $9.30 per share on November 13, 2025, on unusually heavy trading volume.

12.     Through this action, Plaintiff seeks to hold the Board and executive officers accountable for making or causing the Company to make false and misleading statements, as well as the inadequate internal controls that allowed the misconduct to occur, in breach of their fiduciary duties to the Company.

## PARTIES

### A.     Plaintiff

13.     Plaintiff Thompson is a current shareholder of Ardent and has continuously held Ardent stock during all times relevant hereto, and is committed to retaining Ardent shares through the pendency of this action to preserve his standing. Plaintiff will adequately and fairly represent the interests of Ardent and its shareholders in enforcing its rights.

### B.     Nominal Defendant

14.     Nominal Defendant Ardent is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 340 Seven Springs Way, Suite 100, Brentwood, Tennessee 37027. Ardent common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "ARDT."

### C.     Individual Defendants

15.     Defendant Martin J. Bonick has served as President, CEO and a director of the Company since 2020.

16.     Defendant Mark R. Sotir has been a director of the Company and Chairman of the Board since 2017.

17.     Defendant Peter J. Bulgarelli has been a director of the Company since 2018.

18.     Defendant Peter C.B. Bynoe has been a director of the Company since 2015.

19.     Defendant Suzanne Campion has been a director of the Company since 2021.

20.     Defendant Robert A. DeMichiei has been a director of the Company since 2025.

21.     Defendant William M. Goodyear has been a director of the Company since 2019.

22.     Defendant Ellen Havdala has been a director of the Company since 2019.

23.     Defendant Edmondo Robinson, MD has been a director of the Company since 2022.

24.     Defendant Rahul Sen has been a director of the Company since 2020.

25.     Defendant Rober T. Webb has been a director of the Company since 2022.

26.     Defendants Bonick, Sotir, Bulgarelli, Bynoe, Campion, DeMichiei, Goodyear, Havdala, Robinson, Sen and Webb are herein referred to as "Director Defendants."

27.     Defendant Alfred Lumsdaine has served as CFO of the Company since 2021.

28.     Defendants Bonick and Lumsdaine are herein referred to as "Officer Defendants."

## JURISDICTION AND VENUE

29.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a)(1), and Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9.

30.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

31.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

32.     Venue is proper in this court under 28 U.S.C. § 1391, because Ardent is headquartered in this District, and a significant amount of the conduct at issue took place and had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

**A.     Company Background**

33.     Ardent is a holding company that has affiliates that operate acute care hospitals and other facilities and employ physicians. Ardent and its affiliates operate in eight mid-sized urban markets across six states: Texas, Oklahoma, New Mexico, New Jersey, Idaho, and Kansas. The Company delivers care through a system of 30 acute care hospitals, approximately 280 sites of care, and over 1,800 providers that are either employed by or affiliated with Ardent.

34.     The Company and its affiliates provide both general and specialty services, including internal medicine, general surgery, cardiology, oncology, orthopedics and emergency services, within inpatient and ambulatory care settings. Ardent also operates a network of ambulatory facilities and telehealth services, including primary and specialty care clinics, ambulatory surgery centers, urgent care centers, free-standing emergency departments, and diagnostic imaging centers.

35.     Ardent's revenue is primarily comprised of net patient service revenue. The Company recognizes net patient service revenue in the period in which it provides services and based upon the amounts it expects to receive from patients and third-party payors.

36.     A critical aspect of Ardent's operating performance is collection of accounts receivable, primarily from Medicare, Medicaid, managed care payors, other third-party payors, and patients. Ardent told investors that it routinely reviews accounts receivable balances by monitoring several metrics, including historical cash collections. In addition, Ardent purported to

rely on the results of "detailed reviews of historical collections" at its facilities as a primary source of information in determining the collectability of its accounts receivable (the "hindsight analysis").

37. Since May 2022, Ardent outsourced its revenue cycle management functions to Ensemble. Pursuant to relevant service agreements with Ensemble, Ensemble provides "end-to-end revenue cycle services" for Ardent. This includes collections from patients and third-party payors and assistance in appealing payor claim denials.

**B.      Ardent's False and Misleading Statements**

38. From at least July 18, 2024 through November 12, 2025, Ardent and its executive officers made materially false and misleading statements about the Company's accounts receivable.

39. The Relevant Period begins on July 18, 2024, the day Ardent securities began trading on the NYSE. On June 21, 2024, the Company filed a registration statement for its initial public offering ("IPO") with the SEC on Form S-1, which, after amendments, was declared effective on July 17, 2024 (the "Registration Statement"). The Registration Statement was signed by Defendants Bonick and Lumsdaine. On July 18, 2024, Ardent filed a prospectus for its IPO on Form 424B4, which incorporated into and formed part of the Registration Statement.

40. The Registration Statement detailed Ardent's process to determine the collectability of its accounts receivable. The Registration Statement represented that Ardent engaged in an active monitoring process that included "detailed reviews of historical collections" and stated that the Company's "management determines [when an] account is uncollectible, at which time the account is written off."

41. Specifically, in the section of the Registration Statement titled "Revenue recognition," the Registration Statement stated that "[t]the collection of accounts receivable, primarily from Medicare, Medicaid, managed care payors, other third party payors, and patients, is critical to our operating performance" and that "[o]ur collection procedures are followed until such time that management determines the account is uncollectible, at which time the account is written off."

42. The Registration Statement also stated in the "Revenue recognition" section that, in determining the collectability of accounts receivable, "[w]e rely on the results of detailed reviews of historical collections at facilities that represent a majority of our revenues and accounts receivable (the "hindsight analysis") as a primary source of information[.]" "We perform the hindsight analysis utilizing twelve-month rolling accounts receivable collection data."

43. The Registration Statement also stated in the "Revenue recognition" section that "[w]e routinely review accounts receivable balances by monitoring historical cash collections as a percentage of trailing net operating revenue, as well as by analyzing current period revenue and admissions by payor, aged accounts receivable by payor, days revenue outstanding, and the composition of self-pay receivables."

44. The Registration Statement further described Ardent's accounts receivable collectability analysis in a section titled "Risks related to our business and industry." There, the Registration Statement stated that "[s]ignificant changes in the payor mix, business office operations, economic conditions or trends in federal and state governmental healthcare coverage may affect our collection of accounts receivable and are considered" in accounts receivable collectability.

45.     The Registration Statement included Condensed Consolidated Balance Sheets that provided the Company's accounts receivable as of March 31, 2024 as follows:

|  | March 31, 2024(1) | December 31, 2023(1) |
|---|---|---|
| **Assets** | | |
| Current assets: | | |
| Cash and cash equivalents | $  372,766 | $    437,577 |
| Accounts receivable | 722,677 | 775,452 |

46.     The Registration Statement discussed the Company's professional liability claims and coverage, stating that one of the "Risk factors" to its business included that it "may be subject to liabilities because of claims brought against our hospitals, physician practices, outpatient facilities or other business operations or against healthcare providers that provide services at our facilities." The Registration Statement also stated that Ardent "maintain[s] professional malpractice liability insurance and general liability insurance in amounts we believe are sufficient to cover claims arising out of the operations of our facilities."

47.     On August 14, 2024, Ardent issued its Form 10-Q for the quarterly period ended June 30, 2024 that was signed by Officer Defendant Lumsdaine. The Form 10-Q provided the Company's accounts receivable as of June 30, 2024 as follows:

|  | June 30, 2024 [(1)] | December 31, 2023 [(1)] |
|---|---|---|
| **Assets** | | |
| Current assets: | | |
| Cash and cash equivalents | $      334,538 | $      437,577 |
| Accounts receivable | 720,989 | 775,452 |

48.     On November 7, 2024, Ardent issues its Form 10-Q for the quarterly period ended September 30, 2024 that was signed by Officer Defendant Lumsdaine. The Form 10-Q provided the Company's accounts receivable as of September 30, 2024 as follows:

|  | September 30, 2024 [(1)] | December 31, 2023 [(1)] |
|---|---|---|
| **Assets** | | |
| Current assets: | | |
| Cash and cash equivalents | $      563,142 | $      437,577 |
| Accounts receivable | 705,747 | 775,452 |

49.     On November 7, 2024, the Company held an earnings call to discuss its third quarter 2024 financial results. During the earnings call, Officer Defendant Bonick offered prepared remarks in which he stated that the Company was "seeing elevated levels of payor denials" and that Ardent "generally views[s] them as aggressive and higher than they should be." He also stated that "[p]ayors have also been slower to pay claims" but that "we have managed these challenges with key assistance from our revenue cycle management partner, Ensemble."

50.     On January 14, 2025, Officer Defendants Bonick and Lumsdaine participated in the J.P. Morgan Healthcare Conference. During the conference, J.P. Morgan analyst Benjamin Rossi noted that Defendants had recently stated that payor denials had "remain[ed] at elevated levels over the past couple of years." He then asked the Officer Defendants to "speak to the changes coming from MCO [managed care organization] plans over the past year" and whether "those trends [are] generally consistent across your different books of business?"

51.     Officer Defendant Lumsdaine responded, stating in pertinent part that the Company had "seen an acceleration" in frontline denials from 2023 to 2024, which had increased "approximately 30% for us" but that "we do believe that we can continue to work with our revenue cycle partner Ensemble Health, who has both great technology and know-how . . . at a payer level because this dynamic isn't spread equally among all payers. It differs by payer and their expertise in combating both this frontline denials as well as ultimately achieving successful overturning of those denials."

52.     On February 27, 2025, Ardent issued its Form 10-K for the fiscal year ended December 31, 2024 that was signed by Officer Defendants Bonick and Lumsdaine. The Form 10-K provided the Company's accounts receivable as of December 31, 2024 as follows:

| | | December 31, 2024 [1] | | December 31, 2023 [1] |
|---|---|---|---|---|
| **Assets** | | | | |
| Current assets: | | | | |
| Cash and cash equivalents | $ | 556,785 | $ | 437,577 |
| Accounts receivable | | 743,031 | | 775,452 |

53.     On May 7, 2025, Ardent issued its Form 10-Q for the quarterly period ended March 31, 2025 that was signed by Officer Defendant Lumsdaine. The Form 10-Q provided the Company's accounts receivable as of March 31, 2025 as follows:

| | | | | |
|---|---|---|---|---|
| **Assets** | | | | |
| Current assets: | | | | |
| Cash and cash equivalents | $ | 495,044 | $ | 556,785 |
| Accounts receivable | | 776,519 | | 743,031 |

54.     On May 7, 2025, the Company held an earnings call to discuss its first quarter 2025 financial results. During the question-and-answer portion of the earnings call, Leerink Partners analyst Whit Mayo stated that he wanted to "follow up on the [e]levated denials." He stated that "I presume . . . this is a continuation of what you saw from last year or are there new changes in payer behavior or dispute resolution[.]"

55.     Officer Defendant Lumsdaine responded, stating in pertinent part that "[y]es, it's a continuation of last year, we really saw that step up happen in the middle of the year . . . There has been a continuation of a slowdown in payments even on clean claims. That's maybe again while denials have not accelerated, there's maybe been a bit of an acceleration from just a length of time to pay a clean claim, and that's certainly showing up impacting our cash flow numbers."

56.     On May 14, 2025, Officer Defendant Bonick participated in the Ardent Health Partners, Inc. at Bank of America Global Healthcare Conference. During the conference, BofA Securities analyst Joanna Gajuk noted that Officer Defendant Bonick had mentioned "some increase in denials" and asked whether the Company expected them to accelerate or improve.

57.     Officer Defendant Bonick responded, stating in pertinent part that the rate of denials was "holding right now," but that it was "something that we're watching very closely." Officer Defendant Bonick stated that "[i]t's turning [] more into a slow pay versus not getting paid. And so our revenue cycle partners are, again, key in battling that, making sure we've got clean claims going off the door that we've got good documentation to support that." Officer Defendant Bonick continued, stating that "our revenue cycle partners [Ensemble] are really strong in terms of knowing what the payers need so we can get claims claimed. And so our denial rates are, I'd say, doing much better than the industry averages[.]"

58.     On August 6, 2025, Ardent issued its Form 10-Q for the quarterly period ended June 30, 2025 that was signed by Officer Defendant Lumsdaine. The Form 10-Q provided the Company's accounts receivable as of June 30, 2025 as follows:

| | June 30, 2025 [(1)] | December 31, 2024 [(1)] |
|---|---|---|
| **Assets** | | |
| Current assets: | | |
| Cash and cash equivalents | $      540,629 | $      556,785 |
| Accounts receivable | 758,641 | 743,031 |

59.     The statements referenced in paragraphs 40-49, 51-53, 55, and 57-58 were materially false and misleading. Ardent did not primarily rely on "detailed reviews of historical collections" in determining collectability of accounts receivable nor did "management determine[] [when an] account is uncollectible." Instead, the Company's accounts receivable framework "utilized a 180-day cliff at which time an account became fully reserved." This allowed Ardent to report higher amounts of accounts receivable during the Relevant Period, and delay recognizing losses on uncollectable accounts. Because of this, the Company's reported financial position was materially false and misleading. What's more, Ardent did not maintain professional malpractice liability insurance in amounts "sufficient to cover claims arising out of [its] operations[.]" In truth, Ardent's professional liability reserves were insufficient to cover "significant social inflationary

pressure in medical malpractice cases the past several years," which had been an "increasing dynamic year-over-year" in the Company's New Mexico market.

**C.      The Truth is Revealed**

60.      On November 12, 2025, after market hours, Ardent revealed a $43 million decrease in third quarter 2025 revenue. The decrease resulted from revised determinations of accounts receivable collectability after the Company transitioned to a new revenue accounting system and from purported "recently completed hindsight evaluations of historical collection trends." The new system – the Kodiak RCA net revenue platform, which is widely used in Ardent's industry – purportedly provided management with "additional information to more precisely" determine accounts receivable collectability, including "more timely consideration of payor denial and payment trends." During the corresponding earnings call the following morning, November 13, 2025, Officer Defendant Lumsdaine revealed that the new system "recognizes reserves earlier in an account's life cycle" compared to the Company's prior collectability framework, which "had utilized a 180-day cliff at which time an account became fully reserved."

61.      On November 12, 2025, Ardent also announced a 9.6% cut to 2025 EBITDA guidance of $57.5 million at the midpoint, from $575 million - $625 million to $530 million - $555 million because of "persistent industry-wide cost pressures," including "payer denials."

62.      Finally, on November 12, 2025, Ardent recorded a $54 million increase in professional liability reserves "arising from a limited set of claims between 2019 and 2022 in New Mexico" as well as "consideration of broader industry trends, including social inflationary pressures." Officer Defendant Lumsdaine stated in the corresponding earnings call the following morning, November 13, 2025, that the increase in professional liability reserves "relates to the New Mexico market where we have seen significant social inflationary pressure in medical

malpractice cases the past several years." Officer Defendant Lumsdaine stated that "this is not new. There has been an increasing dynamic year-over-year of increasing premiums, increasing costs in the New Mexico market."

63.     On this news, the price of Ardent stock fell $4.75 per share, or nearly 34%, from $14.05 per share on November 12, 2025, to close at $9.30 per share on November 13, 2025, on unusually heavy trading volume.

**D.      Defendants' Misconduct Has and Continues to Harm the Company**

64.     As a direct and proximate result of the Defendants' conduct, the Company has been harmed and will continue to be harmed. The harm includes, but is not limited to, the costs already incurred and to be incurred defending the Company in the Securities Class Action, as well as costs to be incurred in remediating deficiencies in the Company's internal controls.

65.     Ardent's reputation and goodwill have also been damaged by the Defendants' misconduct.

**E.      Ardent Issues False and Misleading Proxy Statements**

66.     In addition to the false and misleading statements discussed above, the Director Defendants also caused the Company to issue false and misleading proxy statements during the Relevant Period, including the Schedule 14A Proxy Statement issued on April 8, 2025 (the "Proxy"), that sought stockholder votes to, among other things, re-elect the Director Defendants to serve on the Board.

67.     The Director Defendants drafted, approved, reviewed, and/or signed the Proxy before it was filed with the SEC and disseminated to Ardent's stockholders. The Director Defendants negligently issued materially misleading statements in the Proxy. These allegations are based solely on negligence, they are not based on any allegations of recklessness or knowing

conduct by or on behalf of the Director Defendants and they do not allege or do not sound in fraud. Plaintiff specifically disclaims any allegations of, reliance upon any allegation of, or reference or any allegation of fraud, scienter, or recklessness with regard to the Proxy allegations and related claims.

68.     In support of re-electing themselves, Director Defendants highlighted their supposed oversight of the Company in the Proxy. The Proxy stated:

**Risk Oversight**

Our Board is responsible for overseeing our risk management process. The Board fulfills its responsibility by delegating many of these functions to its committees. Under its charter, the Audit and Compliance Committee is responsible for meeting periodically with management to review our major financial risks and the steps management has taken to monitor and control such risks. The Audit and Compliance Committee also oversees financial reporting and internal controls and compliance programs.

The Board receives reports on risk management from our senior officers and the Audit and Compliance Committee. Also, our Executive Vice President and General Counsel provides a summary of our outstanding material litigation and governmental investigations to our Board at each Board meeting. Additionally, our Board regularly engages in discussions of the most significant risks that we are facing and how these risks are being managed. Our Board of Directors believes that the work undertaken by the Audit and Compliance Committee, together with the oversight provided by the full Board, enables the Board to oversee our risk management function effectively.

69.     The Proxy thus assured stockholders that the Director Defendants understood Company-wide risks, actively oversaw the Company's risks and exposures, as well as steps taken to monitor and mitigate risk exposures. In reality, the Director Defendants were utterly failing in their oversight duties by allowing the Company to operate with inadequate internal controls which resulted in the failure to disclose or prevent the Defendants from causing the Company to make materially false and misleading statements concerning, among other things, its accounts receivable.

70.     As a result of these misleading statements, the Company's stockholders voted via an uninformed stockholder vote to re-elect the Director Defendants to the Board.

**F.      The Board Breached its Fiduciary Duties**

71.     As officers and/or directors of Ardent, the Defendants owed Ardent fiduciary duties of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage Ardent in a fair, just, honest and equitable manner. The conduct of the Director Defendants involves a knowing or reckless violation of their obligations as directors and officers of Ardent, the absence of good faith on their part, and a reckless disregard for their duties to the Company that Director Defendants were aware or should have been aware posed a risk of serious injury to the Company.

72.     Defendants, because of their positions of control and authority as directors and/or officers of Ardent, were able to and did exercise control over the wrongful acts complained of herein. As officers and/or directors of a publicly-traded company, the Defendants had a duty to prevent the dissemination of inaccurate and untruthful information regarding Ardent's financial condition, performance, growth, operations, financial statements, business, management, earnings, internal controls, and business prospects, so as to ensure that the market price of the Company's common stock would be based upon truthful and accurate information.

73.     To discharge their duties, the officers and directors of Ardent were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors and Ardent were required to, among other things:

        (a)     Ensure that the Company complied with its legal obligations and
        requirements, including acting only within the scope of its legal authority and

disseminating truthful and accurate statements to the SEC and the Company's stockholders;

(b)     Conduct the affairs of the Company in a lawful, efficient, business-like manner to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     Refrain from unduly benefiting themselves and other Company insiders at the expense of the Company;

(d)     Oversee public statements made by the Company's officers and employees as to the financial condition of the Company at any given time, including ensuring that any statements about the Company's financial results and prospects are accurate, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(e)     Remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws;

(f)     Maintain and implement an adequate and functioning system of internal controls to ensure that the Company complied with all applicable laws, rules, and regulations; and

(g)     Ensure that the Company is operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state, and local laws, rules and regulations.

74.     The conduct of the Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of the Company, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its stockholders, which the Defendants were aware, or should have been aware, posed a risk of serious injury to the Company.

75.     The Board's Audit and Compliance Committee is tasked with overseeing Ardent's financial reporting system and assisting the Board with its oversight of the adequacy and effectiveness of Ardent's internal controls over financial reporting and its disclosure controls and procedures. Specifically, according to the Audit and Compliance Committee's charter, the Audit and Compliance Committee's Duties and Responsibilities, in furtherance of its purpose, include:

- Review and discuss earnings press releases, as well as financial information and earnings guidance provided to analysts and rating agencies.

- Review reports to management prepared by the Independent Auditor or Internal Audit and any responses to the same by management.

- Discuss with the Independent Auditor the Independent Auditor's judgment about the quality, not just the acceptability, of the accounting principles applied in the Company's financial reporting.

- Discuss policies with respect to risk assessment and risk management, the Company's major litigation and financial risk exposures and the steps management has taken to monitor and control such exposures.

- Review periodically with the Company's chief legal officer, or appropriate delegates, the Company's compliance with legal and regulatory requirements.

- Prepare the report of the Committee required to be included in the Company's annual report or proxy statement.

- Report regularly to the Board, both with respect to the activities of the Committee generally and with respect to any issues that arise regarding the quality or integrity of the Company's financial statements, the Company's compliance with legal and regulatory requirements, the performance and independence of the Independent Auditor or the performance of the Internal

Audit.

- Conduct an annual evaluation assessing the Committee's performance with respect to its purpose, duties, and responsibilities set forth in this Charter and report the results of such evaluation to the Nominating and Corporate Governance Committee and the Board.

76.     In violation of the Audit and Compliance Committee Charter, and their general duties as members of the Audit and Compliance Committee, Defendants DiMichiei, Goodyear, Robinson, and Webb conducted little, if any, oversight of the Company's internal controls over financial reporting, resulting in materially false and misleading statements regarding the Company's business and consciously disregarded their duties to monitor such controls. The Audit and Compliance Committee's complete failure to perform their duties in good faith resulted in misrepresentations to the public and the Company's stockholders.

77.     In addition, as officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act, the Defendants had a duty not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, products, management, earnings, internal controls, and present and future business prospects, so that the market price of the Company's common stock would be based upon truthful and accurate information. Accordingly, the Defendants breached their fiduciary duties by knowingly or recklessly causing the Company to make false and misleading statements of material fact about the Company's maintaining adequate internal controls and compliance with applicable rules and regulations.

78.     The Defendants' flagrant violations of their fiduciary duties and unwillingness to heed the requirements of their Audit and Compliance Committee Charter have inflicted, and will continue to inflict, significant harm on Ardent.

## DERIVATIVE ALLEGATIONS

79.     Plaintiff brings this action derivatively in the right and for the benefit of Ardent to redress injuries suffered by Ardent as a direct result of the Director Defendants' breaches of fiduciary duty. Ardent is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

80.     Plaintiff will adequately and fairly represent the interests of Ardent in enforcing and prosecuting the Company's rights.

81.     Plaintiff was a stockholder of Ardent at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is currently an Ardent stockholder.

## DEMAND FUTILITY ALLEGATIONS

82.     Plaintiff repeats, re-alleges, and incorporates by reference each and every allegation set forth as though fully set forth herein.

83.     The Ardent Board currently has 11 members: Defendants Sotir, Bonick, Bulgarelli, Bynoe, Campion, DeMichiei, Goodyear, Havdala, Robinson, Sen, and Webb.

84.     Plaintiff has not made any demand on Ardent's current Board to institute this action against the Director Defendants, as any pre-suit demand would be excused. The Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

85.     The Director Defendants had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. In addition, the Director Defendants owed a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust

and effective (and/or were being implemented effectively), and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care.

86. The Director Defendants' making or authorization of the false and misleading statements discussed above caused the Company's stock to trade at artificially inflated prices and misrepresented the financial health of Ardent. The failure to timely correct such statements, failure to take necessary and appropriate steps to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and failure to take necessary and appropriate steps to ensure that the Board's duties were being discharged in good faith and with the required due diligence, constitute breaches of fiduciary duties that have resulted in the Director Defendants facing a substantial likelihood of liability. The Director Defendants could not fairly and fully prosecute this action or any other action concerning the misconduct described above.

**A. Demand is Excused as to Defendant Bonick**

87. Defendant Bonick is the Company's President and CEO. According to the Proxy, Defendant Bonick received total compensation of $6,939,257 in 2024. Defendant Bonick depends on Ardent for his income. In addition, Ardent stated in the Proxy that Defendant Bonick is not independent pursuant to NYSE rules.

88. Defendant Bonick served as a director of the Company during the Relevant Time Period. As a director, Defendant Bonick had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Bonick was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

89. Defendant Bonick failed to conduct oversight of the Company's internal controls over financial reporting and the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Ardent's controls, Defendant Bonick failed to protect corporate assets.

90. Defendant Bonick was an active participant in the misconduct described above. Defendant Bonick signed the 2025 10-K, as well as the Forms 10-Q filed by the Company during the Relevant Time Period. Defendant Bonick made false and misleading statements concerning the Company's accounts receivable. Defendant Bonick therefore faces a substantial likelihood of liability.

91. In addition, Defendant Bonick is a named defendant in the Securities Class Action.

92. Thus, Defendant Bonick faces a substantial likelihood of liability, making any demand on Defendant Bonick futile.

**B.     Demand is Excused as to Defendant Sotir**

93. Defendant Sotir served as a director of the Company during the Relevant Time Period. As a director, Defendant Sotir had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Sotir was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

94. Defendant Sotir failed to conduct oversight of the Company's internal controls over financial reporting or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Ardent's controls, Defendant Sotir failed to protect corporate assets.

23

95. According to the Proxy, Defendant Sotir received $349,992 in compensation in connection with his role as a Company director. Accordingly, Defendant Sotir cannot reasonably and objectively consider a demand to sue the Board that controls his continued compensation.

96. Defendant Sotir was an active participant in the misconduct described above. Defendant Sotir signed the 2024 10-K. Defendant Sotir therefore faces a substantial likelihood of liability.

97. Defendant Sotir knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly, Defendant Sotir breached the fiduciary duty of loyalty and good faith by participating in the misconduct described above. Defendant Sotir faces a substantial likelihood of liability for these breaches, making any demand on Defendant Sotir futile.

98. In addition, Defendant Sotir is the president of Equity Group Investments ("EGI"), whose affiliated entity EGI-AM Investments, L.L.C. ("EGI-AM") which owned 54.0% of Ardent's outstanding common stock as of August 4, 2025. Defendant Sotir is a member of the board of directors and executive vice president for Chai Trust Company LLC, the corporate trustee for the trusts held by the Zell family, which founded EGI. For this reason, Defendant Sotir cannot independently consider a demand.

C. **Demand is Excused as to Defendant Bulgarelli**

99. Defendant Bulgarelli served as a director of the Company during the Relevant Time Period. As a director, Defendant Bulgarelli had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Bulgarelli was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

100.    Defendant Bulgarelli failed to conduct oversight of the Company's internal controls over financial reporting or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Ardent's controls, Defendant Bulgarelli failed to protect corporate assets.

101.    According to the Proxy, Defendant Bulgarelli is not independent pursuant to the rules of the NYSE and the SEC because of his position as executive vice president of outpatient medical and research of Ventas, Inc. In 2022 Ardent sold 18 medical office buildings to Ventas for $204.0 million and entered into a leaseback agreement with Ventas for a minimum of 12 years. In addition, as of August 4, 2025, Ventas owns 6.5% of Ardent's outstanding common stock. Thus, Defendant Bulgarelli cannot reasonably and objectively consider a demand to sue the Board upon which he serves.

102.    Defendant Bulgarelli was an active participant in the misconduct described above. Defendant Bulgarelli signed the 2024 10-K. Defendant Bulgarelli therefore faces a substantial likelihood of liability.

103.    Defendant Bulgarelli knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly, Defendant Bulgarelli breached the fiduciary duty of loyalty and good faith by participating in the misconduct described above. Defendant Bulgarelli faces a substantial likelihood of liability for these breaches, making any demand on Defendant Bulgarelli futile.

**D.    Demand is Excused as to Defendant Bynoe**

104.    Defendant Bynoe served as a director of the Company during the Relevant Time Period. As a director, Defendant Bynoe had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations,

prospects, internal controls, and financial statements were accurate. Defendant Bynoe was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

105.    Defendant Bynoe failed to conduct oversight of the Company's internal controls over financial reporting or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Ardent's controls, Defendant Bynoe failed to protect corporate assets.

106.    According to the Proxy, Defendant Bynoe received $470,235 in compensation in connection with his role as a Company director. Accordingly, Defendant Bynoe cannot reasonably and objectively consider a demand to sue the Board that controls his continued compensation.

107.    Defendant Bynoe was an active participant in the misconduct described above. Defendant Bynoe signed the 2024 10-K. Defendant Bynoe therefore faces a substantial likelihood of liability.

108.    Defendant Bynoe knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly, Defendant Bynoe breached the fiduciary duty of loyalty and good faith by participating in the misconduct described above. Defendant Bynoe faces a substantial likelihood of liability for these breaches, making any demand on Defendant Bynoe futile.

109.    In addition, Defendant Bynoe served as managing director of EGI from 2014 to 2019, while Defendant Sotir served as president of EGI and Defendants Havdala and Sen were employed at EGI. For this reason, Defendant Bynoe cannot independently consider a demand.

E.    **Demand is Excused as to Defendant Campion**

110.    Defendant Campion served as a director of the Company during the Relevant Time Period. As a director, Defendant Campion had a duty to ensure that the Company's SEC filings,

press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Campion was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

111. Defendant Campion failed to conduct oversight of the Company's internal controls over financial reporting or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Ardent's controls, Defendant Campion failed to protect corporate assets.

112. According to the Proxy, Defendant Campion received $461,485 in compensation in connection with her role as a Company director. Accordingly, Defendant Campion cannot reasonably and objectively consider a demand to sue the Board that controls her continued compensation.

113. Defendant Campion was an active participant in the misconduct described above. Defendant Campion signed the 2024 10-K. Defendant Campion therefore faces a substantial likelihood of liability.

114. Defendant Campion knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly, Defendant Campion breached the fiduciary duty of loyalty and good faith by participating in the misconduct described above. Defendant Campion faces a substantial likelihood of liability for these breaches, making any demand on Defendant Campion futile.

115. In addition, Defendant Campion is a member of the board of directors for Chai Trust Company LLC, the corporate trustee for the trusts held by the Zell family, which founded EGI. Defendant Sotir also serves on the board of directors for Chai Trust Company LLC.

**F.    Demand is Excused as to Defendant DeMichiei**

116.    Defendant DeMichiei served as a director of the Company during the Relevant Time Period. As a director, Defendant DeMichiei had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant DeMichiei was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

117.    Defendant DeMichiei failed to conduct oversight of the Company's internal controls over financial reporting or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Ardent's controls, Defendant DeMichiei failed to protect corporate assets.

118.    Defendant DeMichiei served on the Audit and Compliance Committee during the Relevant Time Period. The Audit and Compliance Committee is responsible for assisting the Board in its oversight of i) the integrity of the Company's financial statements, ii) the Company's compliance with its legal and regulatory requirements, iii) the qualifications and independence of the Company's external auditor, and iv) the performance of the Company's internal auditing department and external auditor. The Audit and Compliance Committee was thus responsible for reviewing and approving Ardent's Forms 10-Q and 10-K filed during the Relevant Time Period. Defendant DeMichiei was thus responsible for knowingly or recklessly allowing the improper statements related to the Company's accounts receivable.

119.    Defendant DeMichiei knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly, Defendant DeMichiei breached the fiduciary duty of

loyalty and good faith by participating in the misconduct described above. Defendant DeMichiei faces a substantial likelihood of liability for these breaches, making any demand on Defendant DeMichiei futile.

## G.    Demand is Excused as to Defendant Goodyear

120.    Defendant Goodyear served as a director of the Company during the Relevant Time Period. As a director, Defendant Goodyear had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Goodyear was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

121.    Defendant Goodyear failed to conduct oversight of the Company's internal controls over financial reporting or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Ardent's controls, Defendant Goodyear failed to protect corporate assets.

122.    According to the Proxy, Defendant Goodyear received $481,485 in compensation in connection with his role as a Company director. Accordingly, Defendant Goodyear cannot reasonably and objectively consider a demand to sue the Board that controls his continued compensation.

123.    Defendant Goodyear was an active participant in the misconduct described above. Defendant Goodyear signed the 2024 10-K. Defendant Goodyear therefore faces a substantial likelihood of liability.

124.    Defendant Goodyear served on the Audit and Compliance Committee during the Relevant Time Period. The Audit and Compliance Committee is responsible for assisting the

Board in its oversight of i) the integrity of the Company's financial statements, ii) the Company's compliance with its legal and regulatory requirements, iii) the qualifications and independence of the Company's external auditor, and iv) the performance of the Company's internal auditing department and external auditor. The Audit and Compliance Committee was thus responsible for reviewing and approving Ardent's Forms 10-Q and 10-K filed during the Relevant Time Period. Defendant Goodyear was thus responsible for knowingly or recklessly allowing the improper statements related to the Company's accounts receivable.

125. Defendant Goodyear knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly, Defendant Goodyear breached the fiduciary duty of loyalty and good faith by participating in the misconduct described above. Defendant Goodyear faces a substantial likelihood of liability for these breaches, making any demand on Defendant Goodyear futile.

**H.    Demand is Excused as to Defendant Havdala**

126. Defendant Havdala served as a director of the Company during the Relevant Time Period. As a director, Defendant Havdala had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Havdala was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

127. Defendant Havdala failed to conduct oversight of the Company's internal controls over financial reporting or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Ardent's controls, Defendant Havdala failed to protect corporate assets.

128.    According to the Proxy, Defendant Havdala received $472,735 in compensation in connection with her role as a Company director. Accordingly, Defendant Havdala cannot reasonably and objectively consider a demand to sue the Board that controls her continued compensation.

129.    Defendant Havdala was an active participant in the misconduct described above. Defendant Havdala signed the 2024 10-K. Defendant Havdala therefore faces a substantial likelihood of liability.

130.    Defendant Havdala knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly, Defendant Havdala breached the fiduciary duty of loyalty and good faith by participating in the misconduct described above. Defendant Havdala faces a substantial likelihood of liability for these breaches, making any demand on Defendant Havdala futile.

131.    In addition, Defendant Havdala serves as a managing director of EGI. Defendant Havdala is responsible for establishing and overseeing the Zell Global Entrepreneurship Network, which is sponsored by the Zell Family Foundation. For this reason, Defendant Bynoe cannot independently consider a demand.

**I.      Demand is Excused as to Defendant Robinson**

132.    Defendant Robinson served as a director of the Company during the Relevant Time Period. As a director, Defendant Robinson had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Robinson was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

133. Defendant Robinson failed to conduct oversight of the Company's internal controls over financial reporting or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Ardent's controls, Defendant Robinson failed to protect corporate assets.

134. According to the Proxy, Defendant Robinson received $475,235 in compensation in connection with his role as a Company director. Accordingly, Defendant Robinson cannot reasonably and objectively consider a demand to sue the Board that controls his continued compensation.

135. Defendant Robinson was an active participant in the misconduct described above. Defendant Robinson signed the 2024 10-K. Defendant Robinson therefore faces a substantial likelihood of liability.

136. Defendant Robinson served on the Audit and Compliance Committee during the Relevant Time Period. The Audit and Compliance Committee is responsible for assisting the Board in its oversight of i) the integrity of the Company's financial statements, ii) the Company's compliance with its legal and regulatory requirements, iii) the qualifications and independence of the Company's external auditor, and iv) the performance of the Company's internal auditing department and external auditor. The Audit and Compliance Committee was thus responsible for reviewing and approving Ardent's Forms 10-Q and 10-K filed during the Relevant Time Period. Defendant Robinson was thus responsible for knowingly or recklessly allowing the improper statements related to the Company's accounts receivable.

137. Defendant Robinson knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly, Defendant Robinson breached the fiduciary duty of loyalty and good faith by participating in the misconduct described above. Defendant Robinson

faces a substantial likelihood of liability for these breaches, making any demand on Defendant Robinson futile.

**J.      Demand is Excused as to Defendant Sen**

138.    Defendant Sen served as a director of the Company during the Relevant Time Period. As a director, Defendant Sen had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Sen was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

139.    Defendant Sen failed to conduct oversight of the Company's internal controls over financial reporting or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Ardent's controls, Defendant Sen failed to protect corporate assets.

140.    According to the Proxy, Defendant Sen received $284,992 in compensation in connection with his role as a Company director. Accordingly, Defendant Sen cannot reasonably and objectively consider a demand to sue the Board that controls his continued compensation.

141.    Defendant Sen was an active participant in the misconduct described above. Defendant Sen signed the 2024 10-K. Defendant Sen therefore faces a substantial likelihood of liability.

142.    Defendant Sen knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly, Defendant Sen breached the fiduciary duty of loyalty and good faith by participating in the misconduct described above. Defendant Sen faces a substantial likelihood of liability for these breaches, making any demand on Defendant Sen futile.

143.    In addition, Defendant Sen is a managing director at EGI. For this reason, Defendant Sen cannot independently consider a demand.

**K.    Demand is Excused as to Defendant Webb**

144.    Defendant Webb served as a director of the Company during the Relevant Time Period. As a director, Defendant Webb had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Webb was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

145.    Defendant Webb failed to conduct oversight of the Company's internal controls over financial reporting or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Ardent's controls, Defendant Webb failed to protect corporate assets.

146.    According to the Proxy, Defendant Webb received $465,235 in compensation in connection with his role as a Company director. Accordingly, Defendant Webb cannot reasonably and objectively consider a demand to sue the Board that controls his continued compensation.

147.    Defendant Webb was an active participant in the misconduct described above. Defendant Webb signed the 2024 10-K. Defendant Webb therefore faces a substantial likelihood of liability.

148.    Defendant Webb served on the Audit and Compliance Committee during the Relevant Time Period. The Audit and Compliance Committee is responsible for assisting the Board in its oversight of i) the integrity of the Company's financial statements, ii) the Company's compliance with legal and regulatory requirements, iii) the qualifications and independence of the

Company's external auditor, and iv) the performance of the Company's internal auditing department and external auditor. The Audit and Compliance Committee was thus responsible for reviewing and approving Ardent's Forms 10-Q and 10-K filed during the Relevant Time Period. Defendant Webb was thus responsible for knowingly or recklessly allowing the improper statements related to the Company's accounts receivable.

149.     Defendant Webb knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly, Defendant Webb breached the fiduciary duty of loyalty and good faith by participating in the misconduct described above. Defendant Webb faces a substantial likelihood of liability for these breaches, making any demand on Defendant Webb futile.

150.     Based on the facts alleged herein, there is a substantial likelihood that Plaintiff will be able to prove that these individuals breached their fiduciary duties by condoning the misconduct and failing to take meaningful action to remedy the resultant harm.

## CLAIMS FOR RELIEF

## COUNT I

## Breach of Fiduciary Duty
## (Derivatively Against The Director Defendants)

151.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

152.     Each of the Director Defendants owed and owes Ardent the highest obligations of loyalty, good faith, due care, and oversight.

153.     Each of the Director Defendants violated and breached their fiduciary duties of loyalty, good faith, candor and oversight to the Company.

154.     The Director Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company. In breach of their fiduciary

duties, the Director Defendants failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls.

155.    In addition, the Director Defendants further breached their fiduciary duties owed to Ardent by willfully or recklessly making and/or causing the Company to make false and misleading statements and omissions of material fact and allowing the Company to operate with inadequate internal controls which resulted in the misrepresentations and failure to disclose that the Company's accounts receivable were not monitored as publicly reported. The Director Defendants failed to correct and cause the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact, exposing them to personal liability to the Company for breaching their fiduciary duties.

156.    The Director Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the wrongdoing set forth herein and to fail to maintain adequate internal controls. The Director Defendants had actual knowledge that the Company was engaging in the wrongdoing set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the wrongdoing and to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities. The Director Defendants, in good faith, should have taken appropriate action to correct the schemes alleged herein and to prevent them from continuing to occur.

157.    As a direct and proximate result of the breaches of duty alleged herein, Ardent has sustained and will sustain significant damages.

158.    As a result of the misconduct alleged herein, these Defendants are liable to the Company.

159.    Plaintiff, on behalf of Ardent, has no adequate remedy at law.

## COUNT II

### Breach of Fiduciary Duty
### (Derivatively Against the Officer Defendants)

160.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

161.    The Officer Defendants are executive officers of the Company. As executive officers, the Officer Defendants owed and owe Ardent the highest obligations of loyalty, good faith, due care, oversight, and candor.

162.    The Officer Defendants breached their fiduciary duties owed to Ardent by willfully or recklessly making and/or causing the Company to make false and misleading statements and omissions of material fact, failing to disclose that the Company's accounts receivable were not monitored as publicly reported. The Officer Defendants failed to correct and cause the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact.

163.    As a direct and proximate result of the breaches of duty alleged herein, Ardent has sustained and will sustain significant damages.

164.    As a result of the misconduct alleged herein, the Officer Defendants are liable to the Company.

165.    Plaintiff, on behalf of Ardent, has no adequate remedy at law.

## COUNT III

### Gross Mismanagement
### (Against All Defendants)

166.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

167.     By their actions alleged herein, the Defendants abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of the Company in a manner consistent with the operations of a publicly held corporation

168.     As a direct and proximate result of the Defendants' gross mismanagement and breaches of duty alleged herein, Ardent has sustained and will sustain significant damages.

169.     As a result of the misconduct alleged herein, the Defendants are liable to the Company.

170.     Plaintiff, on behalf of Ardent, has no adequate remedy at law.

**COUNT IV**

**Waste of Corporate Assets**
**(Derivatively Against All Defendants)**

171.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

172.     The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the Relevant Time Period. It resulted in continuous, connected, and ongoing harm to the Company.

173.     As a result of the misconduct described above, the Defendants wasted corporate assets by, inter alia: (i) paying excessive compensation and bonuses to certain of its executive officers; and (ii) incurring potentially millions of dollars of legal liability and/or legal costs to defend Defendants' unlawful actions.

174.     As a direct and proximate result of the waste of corporate assets and breaches of duty alleged herein, Ardent has sustained significant damages.

175. As a result of the misconduct alleged herein, the Defendants are liable to the Company.

176. Plaintiff, on behalf of Ardent, has no adequate remedy at law.

## COUNT V

### Unjust Enrichment
### (Derivatively Against the Officer Defendants)

177. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

178. By their wrongful acts, violations of law, and false or misleading statements or omissions of material fact that they caused to be made, the Officer Defendants were unjustly enriched at the expense of, and the detriment of, the Company.

179. The Officer Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from the Company that was tied to the performance of the Company or its stock price, or received compensation or other payments that were unjust in light of the Officer Defendants' bad faith conduct.

180. Plaintiff, on behalf of Ardent, seeks restitution from the Officer Defendants and seeks an order from this Court disgorging all profits, including from insider transactions, the redemption of preferred stock, benefits, and other compensation, including any performance-based or valuation- based compensation, obtained by the Officer Defendants due to their wrongful conduct and breach of their fiduciary duties.

## COUNT VI
### Violation of Section 14(a) of the Exchange Act
### (Against The Director Defendants)

181. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

182.    The section 14(a) Exchange Act claims alleged herein are based solely on negligence. They are not based on any allegation of reckless or knowing conduct by or on behalf of the Director Defendants. The section 14(a) Exchange Act claims detailed herein do not allege and do not sound in fraud. Plaintiff specifically disclaims any allegation of, reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to the nonfraud claims.

183.    The Director Defendants negligently issued, caused to be issued, and participated in the issuance of materially misleading written statements to stockholders which were contained in the Proxy. In the Proxy, the Board solicited stockholder votes to reelect the Director Defendants to the Board.

184.    The Proxy, however, misrepresented and failed to disclose the Board's risk oversight and the Company's inadequate internal controls, which facilitated the illegal behavior described herein. By reasons of the conduct alleged herein, the Director Defendants violated section 14(a) of the Exchange Act. As a direct and proximate result of these defendants' wrongful conduct, Ardent misled and deceived its stockholders by making materially misleading statements that were essential links in stockholders following the Company's recommendation and voting to reelect the Director Defendants.

185.    Plaintiff, on behalf of Ardent, thereby seeks relief for damages inflicted upon the Company based upon the misleading Proxy in connection with the improper reelection of the Director Defendants to the Board.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff demands judgment as follows:

A.        Declaring that Plaintiff may maintain this derivative action on behalf of Ardent

and that Plaintiff is a proper and adequate representative of the Company;

B.    Against all of the Defendants and in favor of Ardent for the amount of damages sustained by the Company as a result of the acts and transactions complained of herein;

C.    Granting appropriate equitable relief to remedy the Defendants' breaches of fiduciary duties, including, but not limited to the institution of appropriate corporate governance measures;

D.    Awarding Ardent restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by Defendants;

E.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.    Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: February 26, 2026

/s/ Michael K. Atkins
Michael K. Atkins (BPR #017862)
**REYNOLDS, ATKINS,**
**BREZINA & STEWART, PLLC**
606 W. Main Street, Suite 225
Knoxville, Tennessee 37902
(865) 525-0505 Office
(865) 805-5075 Cell
mka@rabslaw.com

*Attorneys for ANDREW THOMPSON, derivatively*
*on behalf of ARDENT HEALTH, INC.*